[Civ. No. 6515. Third Dist.—May 20, 1941.]

CATHERINE M. GRIFFIN, Appellant, v. COUNTY OF COLUSA et al., Respondents.

Huston, Huston & Huston for Appellant.

Hudson Ford, District Attorney, and Hadsell, Sweet, Ingalls & Lamb for Respondents.

PULLEN, P. J.—This is an appeal from a judgment in favor of defendants, County of Colusa, and the Board of Supervisors of Colusa County, entered after demurrers to an amended complaint were sustained without leave to amend, and also in favor of the Director of the County Hospital, and two nurses, following orders sustaining their demurrers

with right to amend, of which right plaintiff refused to avail herself, and after her default, judgment was entered against her.

Plaintiff brought this action against the above defendants to recover damages for injuries suffered while a patient in the Colusa Memorial Hospital. The amended complaint alleged that the County of Colusa maintained and conducted, in a proprietary capacity, a county hospital known as the Colusa Memorial Hospital, which was under the management and control of the Board of Supervisors, and that Dr. Joseph Tillotson was the surgeon and director, and that Barbara Stevens and Mildred Brown were employed by the county as nurses to care for all patients in the hospital.

It is also alleged the plaintiff applied for hospitalization and agreed to pay the fixed and established cost thereof, and that while a patient therein, and in need of constant nursing, care and attention, and while in a state of delirium from fever and illness, and while wholly unconscious, the defendants failed to render such necessary care and attention by leaving plaintiff unattended, and as a result thereof she fell from her bed in the hospital and was injured. By an amendment to the amended complaint it was further alleged "that . . . the said plaintiff herein was taken suddenly ill and required immediate hospitalization; . . . that said hospital was the only hospital in the County of Colusa to which the said plaintiff could apply for such treatment; that said defendants thereupon admitted the said plaintiff to said hospital for such emergency treatment . . . ".

To this amended complaint the county and the supervisors have interposed demurrers, both general and special, claiming, among other things, that the cause of action is inconsistent with the claim for injury and damage filed with the County Clerk of the County of Colusa, and also that the amended complaint is uncertain in certain specified particulars.

The demurrer of defendant Tillotson was also general and special and was sustained, and plaintiff given time within which to amend, but she elected to stand upon her complaint. A similar demurrer was interposed by the two nurses, and as to them plaintiff chose also not to amend.

Directing our attention to the correctness of the order sustaining, without leave to amend, the demurrers of the county

and of the supervisors. One question raised by both the demurrer of the county and of the supervisors was as to whether the amended complaint was based upon a breach of contract or was an action for negligence, but it seems to have been conceded by counsel for plaintiff that the action was for negligence and it will be so treated here.

Plaintiff relying upon the rule that all facts well pleaded are admitted as true upon demurrer, contends the allegation in the amended complaint "that at all the times herein mentioned the County of Colusa . . . maintained . . . and conducted in a proprietary capacity, a county hospital, known as the Colusa Memorial Hospital", must be accepted as true.

This general rule of pleading, however, does not admit a conclusion of law, nor does it admit the construction placed on an instrument pleaded in the complaint, or facts impossible in law, or allegations contrary to facts of which a court may take judicial knowledge. As evidence of this rule and as illustrative of a situation quite similar as to the facts is the case of *Villalpando* v. *City of Cheyenne*, 51 Wyo. 300 [C5 Pac. (2d) 1109]. There plaintiff sued defendant for injuries caused by the negligence of a city employee in the operation of a city street sprinkler. The complaint alleged "that said motor vehicle . . . was owned and operated by defendant . . . and defendant, its agents, servants and employees were driving and operating said motor vehicle . . . in sprinkling certain streets . . . ; that defendant was thereupon engaged in a private or municipal capacity and not in a governmental capacity."

Plaintiff, as here, contended the general demurrer admitted the truth of this allegation, but the court, relying upon *State ex rel. Wyoming Agr. College* v. *Irvine*, 14 Wyo. 318 [84 Pac. 90], held the allegation was not admitted, and that the sprinkling of the streets of a city was in fact a governmental and not a proprietary function of the city. The same principle was declared in *People* v. *Oakland Water Front Co.*, 118 Cal. 234 [50 Pac. 305]; *Mullan* v. *State*, 114 Cal. 578 [46 Pac. 670, 34 L. R. A. 262]; *People* v. *Roach*, 76 Cal. 294 [18 Pac. 407]. That the operation of a county hospital is a government function was first stated in the early case of *Sherbourne* v. *Yuba County*, 21 Cal. 113 [81 Am. Dec. 151].

The complaint here, however, further alleged that the Colusa Memorial Hospital was maintained and conducted by the county for the purpose of furnishing hospitalization to the following persons:

First: To all indigent sick in the county, and in the case of indigents without means to pay for the same, the hospital would furnish such necessary medical and surgical attention and service as might be required without charge.

Second: Free hospitalization to all veterans who were legal residents of the County of Colusa, and those directly dependent upon them.

Third: To other residents of the county as the facilities of the hospital would permit, upon payment of the cost of hospitalization and for medical and surgical services, and

Fourth: In the case of an emergency to anyone needing attention, who would be admitted and charged the cost of such hospitalization and medical and surgical services. In addition to the foregoing groups any expectant mother who is unable to pay for her necessary care shall be admitted, and the cost thereof shall be a charge against the county of her residence. (Sec. 204, Welf. & Inst. Code.)

From these classifications it would appear that the county was conducting a general public hospital, and it cannot be held as a matter of law, that the hospital was conducted in a proprietary capacity, regardless of any allegation to that effect in the complaint. In the first two groups applicants were admitted without charge; in the two latter groups the service was rendered at cost and without profit. The fact that the hospital admitted certain paying patients did not convert a public hospital into a proprietary or private hospital. In *Melvin* v. *State of California*, 121 Cal. 16 [53 Pac. 416], plaintiff, the holder of a ticket of admission to the State Fair was injured by the collapse of a grandstand. The court held that the State Agricultural Society was a state institution, and was authorized to charge an admission under its general authority to operate a state fair, and there said: "It does not follow, however, that the Society is organized for gain. It exists for the sole purpose of promoting the public interest in the business of agriculture and kindred objects. It is an agency of the government, and in no sense an organization for pecuniary profit to the state," and there-

fore remained a state agency regardless of the collection of an admission fee.

In *Kellar* v. *City of Los Angeles*, 179 Cal. 605 [178 Pac. 505], it was claimed the operation of this particular summer camp was in a proprietary capacity, but the court said that the fact that "a small charge is made upon those children going to and staying at the camp, for the purpose of assisting in defraying the cost of maintenance of such children while at the camp, does not change the situation."

In *Manning* v. *City of Pasadena*, 58 Cal. App. 666 [209 Pac. 253], it was held that the sale of garbage by the city after its collection did not convert the governmental activity into a proprietary function so as to render the city liable for the negligent acts of its employees while engaged in gathering the garbage together. To the same effect is *Davie* v. *Board of Regents*, 66 Cal. App. 693 [227 Pac. 243], where a charge was made upon each student at the University of California at Berkeley, to maintain an infirmary.

In considering cases bearing upon the distinction between governmental and proprietary functions it is important to recall the legal difference between a city and a county. Counties are state agencies which exercise within their boundaries the sovereignty of the state, and in the absence of a specific statute imposing liability upon them they are no more liable than the state itself. Cities, however, are municipal corporations and not state agencies. This distinction is clearly expressed in *Dillwood* v. *Riecks*, 42 Cal. App. 602 [184 Pac. 35].

Having in mind this distinction and the universally recognized rule of construction that laws in derogation of sovereignty shall be construed strictly in favor of the state, it would appear that the two statutes, Act No. 5149 and Act No. 5619 of Deering's General Laws, volume Two, at pages 2204 and 2630 respectively, fix the liability of the county.

It is true that the Welfare and Institutions Code, sections 200–204, in authorizing the supervisors of a county to provide for the care and maintenance of the indigent sick or dependent poor of a county does not, in express terms, authorize the establishment of a hospital for all the purposes hereinbefore set forth, but in *Goodall* v. *Brite*, 11 Cal. App. (2d) 540 [54 Pac. (2d) 510], it was held the supervisors under the police power granted by section 11 of article XI

of the Constitution had the right under that authority to adopt rules and regulations for the operation of a county hospital, to admit a patient in need of hospitalization who could not himself, or through legally liable relatives, pay the charges of a private institution. The court there also declared such a right to admit such persons might be founded upon the definition of an indigent to be one who had insufficient means to pay for hospitalization after providing for those who legally had a claim upon him for their support, and cited many cases in support of that interpretation.

A further power of the supervisors to extend the right of admission to a county hospital is found in *Calkins* v. *Newton,* 36 Cal. App. (2d) 262 [97 Pac. (2d) 523]. There an action was commenced against the county of Siskiyou and certain physicians and nurses for injuries sustained by plaintiff while a patient in the county hospital. It was there claimed, as here, that the county was acting in a proprietary capacity in conducting the hospital under the facts there existing. It appeared from the amended complaint that there were no private hospitals in the vicinity of the general county hospital at Yreka, and the delay incident to transporting a person in need of hospitalization to another hospital might be fatal; under such conditions the court held that it was within the police power of the county to open its hospital to all persons in the county, regardless of their financial status, and such a hospital was there held to be a governmental activity.

The facts of this case as alleged in the amended complaint seem to bring it, at least as to the liability of the county, clearly within the rule laid down in the case of *Calkins* v. *Newton, supra,* which case goes even further than the case at bar, for in the Calkins case the question of profit was involved, but in this case no profit was claimed. The question there involved as stated by the court was whether a county was liable for an injury caused by its employees in a hospital operated by the county, at a profit, where such county hospital furnished the only hospital facilities available in the community, and the injured person was a paying patient; or stated more directly, whether the county was acting in a governmental or proprietary capacity under such circumstances. The court then proceeded to hold that the county was acting in a governmental capacity and not liable

for the negligence of its employees. From the foregoing it would appear that here neither the county nor the supervisors were liable in damages to the plaintiff.

The next point to be considered is the order sustaining the demurrer upon behalf of Joseph E. Tillotson, the surgeon and director of the hospital. The amended complaint charged that the defendants negligently and carelessly failed to furnish plaintiff with proper nursing care and attention in that defendants left plaintiff unattended, and as a result thereof she fell from her bed and was injured. From this allegation it does not appear that the defendant Tillotson ordered anyone to do or refrain from doing anything that caused the injury to plaintiff, or that plaintiff entered into any contract or agreement with Tillotson for her care or attention. It is alleged in the complaint that the two defendant nurses were employed to take care of plaintiff, but there is no allegation that the personal care or attention devolved upon Tillotson, or that he failed to properly care for her while she was under his personal care or attention.

The gist of the complaint against Tillotson is that he was negligent in his supervision of the nurses, but he as director, did not apparently select or employ these nurses, nor was he as director, responsible to plaintiff for any failure of supervision, but was answerable only to the county that employed him. In *Hilton* v. *Oliver,* 204 Cal. 535 [269 Pac. 425, 61 A. L. R. 297], the trustees of a reclamation district were sued for damages to one whose lands were flooded by the obstruction of a culvert, caused by the negligent acts of the subordinate agents of the district. The trustees were the agents of the reclamation district, a public corporation, and the superintendent and the foreman of the crew were subordinate agents employed in the service of the common principal. "The rule", it is there said, "laid down or approved by the decisions in this state is that an agent is not in general liable to third persons for the misfeasance or malfeasance of a subagent employed by him in the service of his principal, unless he is guilty of negligence in the appointment of such subagents or directs or authorizes the particular wrongful acts of the subagent or improperly cooperates in the latter's acts or omissions." (See, also, *Atkinson* v. *Clark,* 132 Cal. 476 [64 Pac. 769].)

Appellant refers us to *Davie* v. *Board of Regents*, 66 Cal.
App. 689 [227 Pac. 247], where it was held that even if the
Regents of the University were not liable for the tort, never-
theless the employees of the hospital were individually charge-
able with such negligence, and it made no difference whether
the hospital was being conducted in a proprietary capacity
or as a governmental function. That is true where the in-
juries resulted from the negligent care and treatment of the
patient by the employee, but here the director, as we have
pointed out, was not alleged to have had the care of plain-
tiff—that duty resting upon the attendants of the hospital—
and the injury sustained by plaintiff had nothing to do with
the lack of skill or care of the director of the hospital.

It would therefore appear that the personal care of plaintiff
not being upon defendant Tillotson, and there being no direc-
tion to the nurses to do or refrain from doing anything that
caused harm to plaintiff, and there being no contract between
plaintiff and this defendant there was no cause of action
stated against him.

Defendant also urges that he is a public officer, i. e., the
Director of the County Hospital and the failure to serve
upon him a claim for damages as required by section 1, act
5150, General Laws (Deering 1937, vol. two, p. 2205), is fatal
to the maintenance of an action. (*Sponogle* v. *Curnow*, 136
Cal. 580 [69 Pac. 255].) Without discussing this point,
what has been said before is sufficient to uphold the ruling
of the trial court.

The situation of defendant nurses is somewhat differ-
ent from that of the director. The care and attention of
plaintiff was personally entrusted to them, and the complaint
alleges they failed to render such service. When one has un-
dertaken to render assistance or care, even if a volunteer,
the law imposes a duty of care toward the person assisted.
(Restatement, Law of Torts, sec. 324.) The court should
have overruled the demurrer of the two defendant nurses and
required them to answer.

Plaintiff recognizes that to sustain her position this court
must deviate from the rule laid down in several earlier cases,
and to reexamine the law particularly with reference to the
immunity granted counties because of injury inflicted upon
those who are compelled to seek its services.

From several rather recent cases she claims to see a tendency in that direction and calls our attention to *Silva* v. *Providence Hospital,* 14 Cal. (2d) 762 [97 Pac. (2d) 798], and *England* v. *Hospital of Good Samaritan,* 14 Cal. (2d) 791 [97 Pac. (2d) 813]. These do not, of course, discuss the responsibility of a state agency and deal only with private charitable institutions.

Plaintiff also refers to *Yolo* v. *Modesto Irr. Dist.,* 216 Cal. 274, 275 [13 Pac. (2d) 908], where the court said: "The rule excluding state agencies from liability for torts is an exception to the general rule which we are not inclined to extend". However, it must be remembered in that case Modesto Irrigation District was created as an irrigation district, but subsequently under proper provisions of a later law, constructed power houses and transmission lines for the manufacture, distribution and sale of electric power throughout its territory and outside its boundaries, competing with privately owned power companies in the area served. The court held that by engaging in these activities it stepped outside the character and functions of an irrigation district, and assumed the status of a municipal corporation, thereby joining a class that is liable for the torts of its agents. Here the legislature, rather than indicating a purpose or intent to relax the law as to nonliability of a state agency, has refused so to do, and where the legislature has refused to act, the courts should not, by decision, attempt to legislate.

That part of the judgment in favor of defendants County of Colusa, the Board of Supervisors, and the Director of the Hospital is affirmed, and that portion of the judgment in favor of Barbara Stevens and Mildred Brown is reversed, with the right to plead further if so advised. Each of the parties to pay his own costs on appeal.

Tuttle, J., and Thompson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 17, 1941. Carter, J., voted for a hearing.